**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edward F. ROSS, Defendant-Appellant.**

**No. 79–1557.**

United States Court of Appeals, Ninth Circuit.

June 19, 1980.

Rehearing Denied Sept. 8, 1980.

---

Bernard Goldman, for defendant-appellant.

Curtis B. Rappe, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before PECK,* ANDERSON and PREGERSON, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Defendant-appellant perfected this appeal from a judgment of conviction, entered pursuant to a jury verdict finding him

* The Honorable John W. Peck, Senior United States Circuit Judge, United States Court of

guilty of each of three counts of failing to file income tax returns for the years 1972, 1973 and 1974, in violation of 26 U.S.C. § 7203. This section prohibits a person from wilfully failing to file a tax return with knowledge that the return is required by law.

The evidence at trial established the fact that in the early 1970's defendant became a vocal member of a group of tax protestors who expounded the theory that a citizen's constitutional rights relating to the filing of income tax returns entitled the citizen to withhold the information requested on a 1040 tax return. The main thrust of the meetings of the group that appellant attended was the discussion that a citizen has a constitutional right not to be a witness against himself, and that this right extends to the filing of 1040 tax returns. Instead of giving the information required by the 1040 form, citizens, including the appellant, claimed their Fifth Amendment privilege against self-incrimination on their 1040 forms. Following the advice of "the so-called leaders of the tax movement," as appellant describes them, appellant was subsequently charged with wilful failure to file for the years in question.

It should be noted that appellant actually made some filings for each of the years, 1972, 1973 and 1974. He filed two form 1040's for 1972, one for 1973, and a belated 1040 for 1974, that was not dated until May 1, 1975. However, none of these documents contained financial information from which appellant's income tax could be computed. These various filings do not create an issue on appeal, in light of the fact that A. F. Porth, a defense witness, testified that appellant had attended meetings conducted by him relative to income tax protest techniques, and that he had made appellant aware of his own (Porth's) conviction for failure to file income tax returns based on the filing of documents which did not include financial information from which a tax could be computed. *See U. S. v. Porth*, 426 F.2d 519 (10th Cir. 1970), *cert. denied*,

Appeals for the Sixth Circuit, sitting by designation.

400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53. Thus, appellant was aware that a form 1040 is not a proper return if the form does not contain information sufficient to enable the government to compute a taxpayer's tax liability. *See United States v. Klee*, 494 F.2d 394, 397 (9th Cir.), *cert. denied*, 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974).

At trial the government established the appellant's obligation to file for the years 1972 through 1974 by evidence showing, on the basis of the bank deposits method of analysis, that he had received income in the amounts of $16,510.50, $24,477.73 and $21,988.02 for the years 1972, 1973 and 1974, respectively. The government further established that appellant had knowledge of his obligation to file tax returns for these years by the fact of his having filed income tax returns for previous years, and by evidence showing that he had had checks for his professional services as a chiropractor made payable to his son.

### JURY INSTRUCTION

■ The district court instructed the jury, in part, as follows:

> [I]ntent ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operations of the human mind.
>
> You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequence of acts knowingly done or knowingly omitted. As has been said to you throughout these instructions, it is entirely up to you to decide what facts to find from the evidence.

Defendant argues that this instruction improperly shifted the burden of proof to defendant, contrary to the holding of the Supreme Court in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). In *Sandstrom*, the Supreme Court considered an instruction in which a jury was told that "the law presumes that a person intends the ordinary consequences of his voluntary acts." The Court held that this instruction violated the Fourteenth Amendment requirement that a State prove every element of a criminal offense beyond a reasonable doubt.

We conclude that the holding of the Court in *Sandstrom* is of no avail to defendant in the case now before us. The instruction that was struck down in *Sandstrom* is fundamentally different from the instruction that was given by the court in the present case. The court herein instructed the jury that they ". . . *may* consider it reasonable to draw the *inference* . . ." that a person intends the natural and probable consequence of his voluntary acts. (Emphasis added.) The court then coupled this instruction with a reminder that ". . . it is entirely up to you [the jury] to decide what facts to find from the evidence." In other words, the court instructed the jury that they *may infer* a conclusion from a proven fact, but it did not instruct the jury that *the law presumes* a conclusion. There is a significant difference between an inference and a presumption, and the Supreme Court noted this difference when it held that the jury instruction in *Sandstrom* was constitutionally deficient. The Court wrote:

> Sandstrom's jurors were told that "the law presumes that a person intends the ordinary consequences of his voluntary acts." *They were not told that they had a choice, or that they might infer that conclusion*; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as *mandatory*. (Emphasis added.)

442 U.S. at 515, 99 S.Ct. at 2454. This distinction between a presumption and an inference was again highlighted in *Sandstrom* by Justice Rehnquist in his concurrence. Therein, Justice Rehnquist, joined by Chief Justice Burger, stated that ". . . if [the] charge had . . . 'merely described a permissive inference,' . . . it could not have conceivably run afoul . . ." of constitutional requirements. 442 U.S. at 527, 99 S.Ct. at 2461. (Rehnquist, J., concurring).

The instruction that is now challenged on appeal did no more than describe for the

jury a permissive inference. The instruction was not mandatory in its tone, and it did not suggest to the jury that they were required to presume a conclusion from a proven fact. To the contrary, the court told the jury that they "may" draw an "inference," but that they were "entirely" free "to decide what facts to draw from the evidence." When the instructions of the court are taken as a whole,[1] we conclude that they did not shift the burden of proof to defendant on any element of the crime.

We note that the instruction that was given by the district court was taken from Devitt & Blackmar, *Federal Jury Practice and Instruction* § 14.13. This instruction was approved by various federal Circuit Courts in a number of pre-*Sandstrom* cases. *See, e. g., United States v. Garrett*, 574 F.2d 778, 783 (3d Cir.), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2265, 56 L.Ed.2d 759 (1978). *See also United States v. Gaines*, 594 F.2d 541, 543–544 (6th Cir.), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2888, 61 L.Ed.2d 314 (1979); *United States v. Dunbar*, 590 F.2d 1340, 1344 (5th Cir. 1979); *United States v. Jenkins*, 567 F.2d 896, 897 n. 2 (9th Cir. 1978). Further, the instruction, or an instruction similar to it, has since been approved in a number of post-*Sandstrom* cases. *See, e. g., Krzeminski v. Perini*, 614 F.2d 121 (6th Cir. 1980); *United States v. Ogle*, 613 F.2d 233, 242–243 (10th Cir. 1979); *United States v. Davis*, 608 F.2d 698, 699 (6th Cir. 1979), *cert. denied*, 445 U.S. 918, 100 S.Ct. 1280, 63 L.Ed.2d 602 (1980).

We also note that defendant herein failed to raise an objection at trial to the instruction that is now challenged on appeal. However, in light of our conclusion that this instruction did not contain error, we need not consider whether defendant is barred from raising his objection for the first time on appeal. *See United States v. Ogle, supra*, 613 F.2d at 242–243.

### JURY DELIBERATIONS

A short time after the jury foreman had sent the district judge a note that "the jury [had] come to an impasse in [its] deliberations," the judge met with the jurors and asked the foreman whether he was "satisfied that it would serve no useful purpose to continue any further deliberations." The foreman responded that he was "not sure as to whether or not [the jury could] come to a verdict on all three counts." At this point, the judge reminded the jury that they could return a partial verdict, and he asked the foreman whether the jury had reached a unanimous verdict on any one count. The foreman stated that the jury had reached a unanimous verdict on the third count. The judge then sent the jury back to deliberate, and he provided them with a clean verdict sheet. The jury continued to deliberate for a brief period, and then returned to court with a guilty verdict on count three. The judge received the verdict, and immediately thereafter asked the foreman, "As you evaluate the situation, does it appear that you would likely arrive at a verdict as to either counts one or two?" The foreman replied, "I feel like we should be able to." The jury was then excused "to continue [its] deliberations at 9:00 o'clock [the next] morning."

---

1. We also note that the district court instructed the jury that defendant's "failure to act" had to "be proved beyond a reasonable doubt to have been done wilfully." The court elaborated that:

> The word "wilfully" . . . means deliberately and intentionally, and without justifiable excuse or with the wrongful purpose of deliberately intending not to file a return which the defendant knew he should have filed, in order to prevent the Government from knowing the extent of his tax liability or facts material to the determination of his tax liability.
>
> Defendant's conduct is not wilful if he acted through negligence, inadvertence, or mistake or due to good faith misunderstanding.

In addition, the court specifically told the jury that:

> The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant; for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

In reviewing the instructions of a trial court, we must view the instructions as a whole. *See e. g., Stoker v. United States*, 587 F.2d 438, 440 (9th Cir. 1978) ("the standard of review is whether or not the instructions taken as a whole were misleading or represented a statement inadequate to guide the jury's deliberations").

At 10:15 a. m. the following day, the jury returned verdicts of guilty on counts one and two.

■ We find no error in the manner in which the district court conducted the jury deliberations. First, nothing in the language of the court coerced the jury into returning its guilty verdicts on any of the three counts. The questions which the court directed to the jury foreman were brief and objective inquiries into the status of the jury deliberations. Second, it is clear that the district court was not required to declare a mistrial immediately upon receipt of the jury's note that it had "come to an impasse" after approximately eight hours of deliberations. The district judge properly questioned the jury as to its current deadlock, and he properly directed his questions to the jury foreman. In *United States v. See*, 505 F.2d 845 (9th Cir. 1974), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975), this Court wrote:

A statement by the jury that it is currently deadlocked has been held an insufficient ground for declaring a mistrial. The judge *should question* the jury in such circumstances, either individually *or through its foreman,* on the possibility that its current deadlock could be overcome by further deliberations. (Emphasis added.)

505 F.2d at 851. *See also United States v. Peskin*, 527 F.2d 71, 84–85 (7th Cir. 1975), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976); *Carlton v. United States*, 359 F.2d 10, 11 (9th Cir. 1968), *cert. denied*, 393 U.S. 1030, 89 S.Ct. 642, 21 L.Ed.2d 574 (1969). Finally, it is settled that a trial court may accept a partial verdict on only one of two or more counts of an indictment. *See, e. g., United States v. Cotter*, 60 F.2d 689, 690 (2d Cir.) (L. Hand, J.), *cert. denied*, 287 U.S. 666, 53 S.Ct. 291, 77 L.Ed. 575 (1932). Likewise, it is permissible for a court to accept a verdict on only one count of an indictment, and then return the jury for further deliberations on the remaining

counts. *See United States v. DeLaughter*, 453 F.2d 908, 910 (5th Cir.), *cert. denied*, 406 U.S. 932, 92 S.Ct. 1769, 32 L.Ed.2d 135 (1972) (trial court returned the jury to jury room to write out a verdict on one count of the indictment to which they had agreed); *United States v. Barash*, 412 F.2d 26, 32 (2d Cir.), *cert. denied*, 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969) (trial court accepted a partial verdict and then returned the jury for further deliberations). Such procedure does not of necessity influence the jury in its deliberations, and a trial court is entitled to exercise its sound discretion in this regard. We find no abuse of discretion in the action of the district court herein in receiving a partial verdict or, more accurately, in receiving a complete verdict in separate segments.

## TESTIMONY OF WILLIAM SHIPLEY

■ Finally, defendant argues that the district court improperly excluded the testimony of William Shipley, a district counsel for the Internal Revenue Service. According to defendant, Mr. Shipley would have testified that in 1976 defendant had filed various 1040 tax returns and that in the same year he had offered to pay any delinquent taxes that were due for calendar years 1972, 1973 and 1974.

We agree with the government that this testimony of Mr. Shipley was properly excluded on the grounds of irrelevancy.[2] The conduct of defendant in the years subsequent to 1972, 1973 and 1974 was not relevant to the charge that defendant had wilfully failed to file tax returns in those three years. *See Sansone v. United States*, 380 U.S. 343, 354, 85 S.Ct. 1004, 1011, 13 L.Ed.2d 882 (1965) ("[T]he intent to report . . . income and pay . . . tax in the future does not vitiate the wilfulness required by [26 U.S.C. § 7203]"). *See also United States v. Ming*, 466 F.2d 1000, 1005 (7th Cir.), *cert. denied*, 409 U.S. 915, 93 S.Ct. 235, 34 L.Ed.2d 176 (1972); and *United States v. Greenlee*, 380 F.Supp. 652, 660–661 (E.D.Pa.

**2.** The government also argues that the testimony of Shipley was properly excluded as hearsay.

1974), *aff'd.*, 517 F.2d 899, 903 (3rd Cir.), *cert. denied*, 423 U.S. 985, 96 S.Ct. 391, 46 L.Ed.2d 301 (1975).

The judgment of the district court is hereby affirmed.